Carey J. **PERRY** and Marietta M. **Perry**, Appellees,

v.

**UNITED STATES of America, Appellant.**

J. Doyle **MEDDERS** and Constance D. **Medders**, Appellees,

v.

**UNITED STATES of America, Appellant.**

Nos. 74–1852, 74–1853.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1975.

Decided July 29, 1975.

Certiorari Denied Jan. 12, 1976.
See 96 S.Ct. 782.

Ernest J. Brown, Atty., Tax Div., U. S. Dept. of Justice (Thomas P. McNamara, U. S. Atty., Richard M. Roberts, Acting Asst. Atty. Gen., Gilbert E. Andrews, Jonathan S. Cohen, Wesley J. Filer, Attys., Tax Div., U. S. Dept. of Justice, on brief), for appellant.

Thomas L. Norris, Jr., Raleigh, N. C. (Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., on brief), for appellees.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

In tax refund suits the district court gave judgment to two physicians for taxes assessed by the government and paid by them resulting from the government's disallowance of their 1969 rental payments for their medical offices. The rental payments were held to be "ordinary and necessary" business expenses deductible under § 162 of the Internal Revenue Code of 1954. 26 U.S.C. § 162(a)(3). The medical offices had been previously owned by taxpayers but leased back after they conveyed title to Clifford trusts for the benefit of their children. Because we conclude that the rental payments were not ordinary and necessary business expenses, we reverse.

## I.

The facts, which were stipulated in most part, are set forth at length in the district court's memorandum of decision,[1] and they need not be repeated at length. The salient ones are that taxpayers (whose wives are joined because they filed joint income tax returns with their husbands) practice medicine in a medical partnership known as Perry-Medders Clinic. They acquired land as tenants in common and constructed on it an office building suitable for their practice. The building was completed in 1963. Ever since, it has been used for their medical practice, and taxpayers have been its sole occupants.

In 1968, each taxpayer established a Clifford trust for the benefit of his chil-

---

1. The district court's opinion is officially reported in 376 F.Supp. 15 (E.D.N.C.1974).

dren,[2] naming the same bank as corporate trustee. Each taxpayer then conveyed his half interest in the property to the trust of which he was the settlor; it was the sole asset of his trust. The trusts were known as the Perry trust and the Medders trust. The term of the Perry trust was ten years; the term of the Medders trust was fourteen years. The provisions of the trust instruments were otherwise identical. Under each, the trustee had broad administrative powers, and remainder interests were reserved in the settlors upon expiration of the trust, or the death of the beneficiaries, whichever should first occur.

Prior to the actual conveyance of the *res* to the trustee, a leaseback of the medical office building was arranged, and the trust instruments and leases were executed contemporaneously. Each taxpayer leased a one-half interest in the building for the same term as the term of the trust he created. Each agreed to pay a monthly rent of $200, to pay personal property taxes on equipment in the building, and to undertake interior maintenance and repairs.

## II.

In concluding that the rent payments were ordinary and necessary business expenses and that taxpayers were entitled to recover the additional 1969 income taxes assessed by reason of their disallowance, the district court recognized an apparent divergence between the views expressed in *Van Zandt v. Commissioner*, 341 F.2d 440 (5 Cir. 1965), which held that rental payments under a similar Clifford trust and leaseback arrangement were not deductible as ordinary and necessary business expenses, and *Skemp v. Commissioner*, 168 F.2d 598 (7

Cir. 1948), which held them deductible. It followed *Skemp*, where the trustee was a bank, and distinguished *Van Zandt* on the basis that in *Van Zandt* the trustee of the Clifford trust was the settlor, who thus retained control over the trust assets. *Skemp* controlled, it was concluded, because in the instant cases a truly independent corporate trustee was named. Indeed, the district court even suggested in a footnote that the corporate trustee, by selling the property to a good-faith purchaser, had a legal right to avoid the prearranged leases because they were not recorded and under North Carolina law were not binding after the expiration of three years from the date of their execution. Although a factor probably leading to the result in *Skemp* was that, there, the settlor retained no reversionary interest in the *res* of the trust upon its termination, while here the property would revert to the settlors upon termination of the trusts, the district court ruled the factor irrelevant since taxpayers paid rent to use the property and not to enlarge their ownership.

We disagree. We think our cases are indistinguishable from *Van Zandt*, that the latter was correctly decided, and that it should be applied here. In *Van Zandt*, the trust and leaseback transaction was, in its essential elements, identical to the instant transactions. Dr. Van Zandt owned the office building in which he conducted his surgical practice. He conveyed it and his equipment to a trustee (himself) for his children for a term of ten years and two months, and simultaneously, as trustee, leased the property and equipment to himself as an individual. Upon the termination of the trust, its assets reverted to Dr. Van Zandt.

2. The parties agree that the trusts created by the taxpayers are valid under the "Clifford" sections of the Internal Revenue Code of 1954, 26 U.S.C. §§ 671–678. Congress has indicated, however, and we agree, that the issue before us must be decided without reference to the validity of the trust under the Clifford sections. See S.Rep. No. 1622, 83d Cong., 2d Sess. 365 (1954), U.S. Code Cong. & Admin. News 1954, p. 5006:

The effect of this provision is to insure that taxability of Clifford type trusts shall be governed solely by this subpart. . . . *This subpart also has no application in determining the right of a grantor to deductions for payments to a trust under a transfer and leaseback arrangement.* (Emphasis added.)

Prior to the transactions, Dr. Van Zandt was under no obligation to pay rent, and the court could find no business purpose in establishing the trust and in the leaseback of the *res* to justify the diversion of a part of Dr. Van Zandt's income to his children. The court was careful to point out that diversion of income was neither an illegal nor an immoral objective, but concluded that the "*obligation* to pay rent resulted not as an ordinary and necessary incident in the conduct of the business, but was in fact created solely for the purpose of permitting a division of the taxpayer's income tax." (Emphasis in original.) Accordingly, it concluded that "[r]ent paid to discharge an obligation so created is itself not an ordinary and necessary business expense." 341 F.2d at 443.

A careful reading of the opinion in *Van Zandt* does not indicate that the fact that Dr. Van Zandt named himself as trustee was crucial to the decision of the case. Rather, the primary basis of decision was the fact that "the trustee had nothing whatever to do in the management of the trusts, except to receive the income which had been predetermined. The whole principal amount of the trust was irrevocably committed to the possession of the grantor the moment the trust was created." 341 F.2d at 443. Viewing the creation of the trust and the leaseback as a single transaction, the court concluded that the "*obligation* to pay rent" was not an *ordinary* and *necessary* incident to a transaction with a *real* business purpose; hence, the deduction for rental payments under § 162 was disallowed.

▇ In the instant case, notwithstanding that the bank was named as trustee, the same is true. The bank had virtually no function save to hold legal title

and to receive and remit the rental payments arranged by the settlors at the time the trusts were created. The terms and conditions of the leases were fixed before the trusts were created and the durations of the leases were identical to those of the trusts. There was literally no area in which the broad powers of management vested in the bank as trustee could operate. Its "independence" from the settlors was largely illusory, and the illusion is given no substance by the mere legal possibility that the bank could breach the leases and actively manage the proceeds of sale. We think, therefore, that the taxpayers' obligations to pay rent to the bank did not result from a transaction with a real business purpose. We conclude to apply and follow *Van Zandt*.[3]

### III.

▇ We do not find *Skemp* compelling because the result in that case rests largely on a bifurcation of the overall transaction, an approach contrary to holdings in this circuit. In *Skemp*, the court viewed creation of the trust and the leaseback separately and not as part of an overall transaction. Thus, it held that while there was no business purpose for creation of the trust, a business purpose arose once the trust was created because the taxpayer was then required to pay rent if he wished to continue to occupy the premises. 168 F.2d at 599–600. In our circuit we customarily view a multistep transaction by its overall effect and not simply by scrutiny of mutually dependent steps. See, e. g., *DeTreville v. United States,* 445 F.2d 1306 (4 Cir. 1971); *J. M. Turner & Co. v. Commissioner,* 247 F.2d 370 (4 Cir. 1957); *Starr v. Commissioner,* 82 F.2d 964 (4 Cir. 1936), *cert. denied,* 298 U.S. 680, 56

---

**3.** We are reinforced in our views by the decisions in *Wiles v. Commissioner,* 491 F.2d 1406 (5 Cir. 1974) (*per curiam*) aff'g, 59 T.C. 289 (1972); *Audano v. United States,* 428 F.2d 251 (5 Cir. 1970); *Chace v. United States,* 422 F.2d 292 (5 Cir. 1970) (*per curiam*) aff'g 303 F.Supp. 513 (M.D.Fla.1969); *Furman v. Commissioner,* 381 F.2d 22 (5 Cir. 1967) (*per cu-*

*riam*) aff'g 45 T.C. 360 (1966). See also *Brooke v. United States,* 468 F.2d 1155, 1159 (9 Cir. 1972) (Ely, J., dissenting); *Finley v. Commissioner,* 255 F.2d 128 (10 Cir. 1958); *White v. Fitzpatrick,* 193 F.2d 398 (2 Cir. 1951), *cert. denied* 343 U.S. 928, 72 S.Ct. 762, 96 L.Ed. 1338 (1952).

S.Ct. 948, 80 L.Ed. 1401 (1936). Real business purpose, therefore, must be shown to the transaction *as a whole* before any expenditures incident to elements of the transaction can be held "ordinary and necessary" business expenses deductible under § 162.

As the *Van Zandt* court pointed out, however, under the overall approach favored in both this circuit and the Fifth Circuit, the *Skemp* result might still be reached. In *Skemp*, more property was conveyed to the trustee than was leased back to the doctor for his use and "there may have been a proper business purpose of conveying the property to the trustees for management and payment of income to the beneficiaries, since the whole income did not come from the grantor." *Van Zandt v. Commissioner*, 341 F.2d at 442. Certainly the trustee performed functions other than being solely the conduit by which part of the doctor's earnings were diverted to his wife and children. Moreover, the grantor divested himself entirely of any interest in the property which he conveyed to the trustee because he retained no reversionary interest in the *res* upon termination of the trusts. In sum, the trustee was not obliged to administer the trust for the ultimate benefit of the grantor. Thus, rent payments by the grantor to the trustee might be part of a transaction with a real business purpose, so that a § 162 deduction would be possible. Consequently we do not think that our reasoning in the instant case is inconsistent with *Skemp*.

Nor are we persuaded by the holdings in *Brooke v. United States, supra,* or *Brown v. Commissioner*, 180 F.2d 926 (3 Cir.), *cert. denied,* 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950), both of which are cited by taxpayers. *Brooke* was decided by a divided court. While we find Judge Ely's dissent persuasive, factually there are dissimilarities between *Brooke* and the instant case which serve to distinguish the two results. Dr. Brooke did not arrange a future long-term diversion of his expected income to his children. The conveyance to taxpayer's minor children was absolute, without remainder, and not in trust. Taxpayer thereafter had himself judicially appointed as guardian for his children. There was no formal leaseback of the premises; the tenancy was from month to month. The guardianship was under continuing judicial supervision, and it and the tenancy could be terminated at any time. The property had other tenants as well as Dr. Brooke.

Unlike the case at bar, there was thus absent the relative certainty that taxpayer's income would be diverted to his children in the amounts fixed by him since the guardianship court could direct termination of the month-to-month tenancy and negotiation of a new tenancy for Dr. Brooke's continued occupancy of the property. Moreover, Dr. Brooke's rental payments were (a) only part of the total rents issuing from the property, (b) which he had irrevocably conveyed away—two indices of a transaction having a real business purpose sufficient to deem his payment of rent an ordinary and necessary business expense for him.

*Brown* followed the bifurcated basis of decision in *Skemp* about which we have already expressed our disapproval. It, too, was a split decision, and it, too, is at least partially factually distinguishable from the cases at bar. Taxpayers conveyed coal lands and land containing a railroad siding to their attorney, as trustee, for the benefit of their children until the eldest, age three, reached twenty-five. Taxpayers did not reserve any reversionary interest. Taxpayers leased the railroad siding for ten years and the right to mine coal for five years; they had paid charges for the use of the siding for some time before they acquired the property on which it was located.

It is manifest that taxpayers did not control the diversion of income to their children throughout the entire terms of the trusts. Moreover, as to rent for use of the siding, the payments were a continuation of the historic pattern of use of the property to produce income, and, as to the royalty for coal mined, payment for property taken. Thus, both

may be considered incidents to a transaction with economic reality and business purpose, so that payment by taxpayers was deductible under § 162.

For the reasons we have advanced, the judgments of the district court are

Reversed.