**Richard R. QUINLIVAN and Ann M. Quinlivan, Roger P. Quinlivan and Joyce E. Quinlivan, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 78–1653.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1979.
Decided May 24, 1979.

Marilyn E. Brookens, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellant; M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Richard Farber, Attys., Washington, D. C., on brief.

Clinton A. Schroeder, of Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for appellees; James A. Vose, Minneapolis, Minn., on brief.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

GIBSON, Chief Judge.

The Government appeals from a decision of the Tax Court [1] holding that Richard and Roger Quinlivan [2] are entitled to deduct rental payments made to a short-term, so-called Clifford trust set up in accordance with sections 671 through 678 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 671–678. The payments were made for the use of an office building previously owned by the taxpayers and transferred by them to a trustee for the benefit of the taxpayers' children. After carefully considering the arguments of the parties and the pertinent statutory and case authority, we affirm.

---

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation.

1. The Honorable William M. Fay, United States Tax Court.

2. Ann M. Quinlivan and Joyce E. Quinlivan are the wives of Richard and Roger, respectively. They are involved in this action by virtue of their having filed joint income tax returns with their husbands. References to "taxpayers" in this opinion mean Richard and Roger, whose legal business generated the challenged deductions.

Richard and Roger Quinlivan are attorneys who reside in St. Cloud, Minnesota. They began the practice of law with their father in the 1950s and continued as members of the same firm following his death in 1961. In 1963, the firm moved into an office building owned by the two brothers as tenants in common. Then on January 2, 1964, each taxpayer transferred his one-half interest in the property to Northwestern National Bank of Minneapolis as trustee under separate trusts for the benefit of the children of each taxpayer.

The trust documents were executed January 2, 1964, and were irrevocable for a period of ten years and six months; at the end of that time trust property reverted to the grantor-taxpayers. Neither the taxpayers nor their wives were connected with the trustee during the years here involved as a shareholder, director, officer, depositor, or employee. All parties agree that under sections 671 through 678 of the Internal Revenue Code of 1954, the income of the trusts was properly taxed to the beneficiaries. Nor is there any question that the taxpayers treated the establishment of the trust properly under the gift tax laws and the laws of Minnesota.

Shortly after January 2, 1964, the trustee and the taxpayers' law firm entered into a written lease of the premises to the law firm. The initial lease was for three years and contained a renewal option "at a rental and terms to be agreed upon." Subsequent agreements increased the rent and continued the law firm's tenancy; each agreement contained the same renewal option. It is stipulated that reasonable rental payments were made to the trustee. During the 1967, 1968, and 1969 taxable years involved in this case, the law firm was composed of Richard and Roger Quinlivan and Gerald Williams.[3] The law firm deducted from its income the rental payments made to the trustee.

In 1975, the Commissioner issued notices of deficiency to the taxpayers and their wives. This was based in part on computation of an increased distributive share of law firm income for each taxpayer after the Commissioner disallowed the rental deductions. Petitions contesting the deficiency notices were filed in the Tax Court. After other issues were settled, the rent deduction issue was submitted to the court on an agreed statement of facts. The Tax Court held the rent deductions were allowable. The Commissioner appeals, positing the issue of "whether the rentals paid are a necessary and ordinary business expense notwithstanding the fact that the obligation to pay such rentals arose out of a transaction serving no business purpose and having tax avoidance as its sole objective."

I

In analyzing the correctness of the conclusions of the Tax Court, we first look at the statutory basis for this deduction. Section 162 of the Internal Revenue Code of 1954 provides, in pertinent part:

(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*   \*   \*   \*   \*   \*

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

In applying tax statutes, including the Internal Revenue Code, the literal meaning of the words chosen by Congress is most important. *Masonite Corp. v. Fly*, 194 F.2d 257, 260–61 (5th Cir. 1952). Mr. Justice Douglas noted and elaborated on this concept when he wrote:

Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and

---

**3.** During 1967 and 1968 the law firm was a partnership. In 1969, it was converted to a corporation and chose a taxable year ending October 31, 1969.

the construction sought is in harmony with the statute as an organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall.

*Lewyt Corp. v. Commissioner*, 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955).

■ Examining section 162(a)(3) from this perspective, we find that Congress has expressly provided for the deduction of rental expenses where:

(1) the payments are required to be made for the continued use or possession of the property;

(2) the continued use or possession of the property is for purposes of the trade or business;

(3) the taxpayer has not taken and is not taking title to the property; and

(4) the taxpayer has no equity in the property.

If all four requirements are met, the law firm is entitled to the deduction and the Tax Court's decision must be affirmed.

■ It is clear that the first requirement has been established. The law firm was required to pay rent under the written leases for the years in question. Had the payments not been made, it is undisputed that the bank as trustee would have been under a fiduciary obligation to evict the law firm and rent the property to others or to sue the law firm for the rent. The trusts were valid and enforceable under Minnesota law. There is no reason to believe that the independent trustee in this case would have violated its fiduciary duties and permitted the law firm to remain in the building without paying rent.

Similarly, it is clear that the continued use of the property was for the purposes of the law firm's business. It could not function without the office space it rented. In like manner, the third requirement is met by title being in the trustee; certainly the law firm was not purchasing the office building.

The fourth requirement in section 162(a)(3) is that the taxpayer have no equity in the property. On appeal, the Government has not argued that the taxpayers have a disqualifying equity here. The Tax Court noted the taxpayers' "reversionary interest was not derived from the lease or the lessor and would only become possessory after the termination of the trusts. Therefore, such interest is not within the prohibition of section 162(a)(3)." Memorandum opinion at 9. We agree. The prohibition on equitable interests seems designed to fill the gaps around the third requirement dealing with title to the property. Taken together, they were intended to prevent the taxpayer from receiving or improperly benefiting from the deducted rental payments.

It is clear that application of the plain meaning of section 162(a)(3) to the facts of this case justifies the deduction. This is a sufficient basis for affirmance of the Tax Court.

## II

Despite the clear application of the statute, the Government has contended for many years that rental deductions should not be allowed where the leased property was previously owned by the lessee and given by him to the lessor. The Government urges that a deduction is allowable only if there was a "business purpose" for the "entire transaction," including the transfer of the property from the taxpayer and the leaseback. Years of litigation has resulted in a few cases adopting the Government's rationale. *See, e. g., Mathews v. Commissioner*, 520 F.2d 323 (5th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976); *Perry v. United States*, 520 F.2d 235 (4th Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976); *Van Zandt v. Commissioner*, 341 F.2d 440 (5th Cir.), *cert. denied*, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). On the other hand, in addition to all recent cases of the Tax Court not appealable to the Fifth Circuit, several courts have adopted positions inconsistent with the Commissioner's contentions and consistent with our holding in this case. *Brooke v. United States*, 468 F.2d 1155 (9th Cir. 1972);

*Brown v. Commissioner,* 180 F.2d 926 (3d Cir.), *cert. denied,* 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950); *Skemp v. Commissioner,* 168 F.2d 598 (7th Cir. 1948); *Engel v. United States,* 400 F.Supp. 5 (W.D.Pa.1975), *aff'd by evenly divided en banc court,* 562 F.2d 41 (3d Cir. 1977).

■ Following the decisions in *Brown* and *Skemp,* the Tax Court has taken the lead in developing a consistent body of law in this area. In the present case the Tax Court stated four requirements which it had previously applied in *Mathews v. Commissioner,* 61 T.C. 12 (1973), *rev'd,* 520 F.2d 323 (5th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976). The four requirements were:

> (1) "The grantor must not retain 'substantially the same control over the property that he had before' he made the gift." (2) "The leaseback should normally be in writing and must require payment of a reasonable rental." (3) "The leaseback (as distinguished from the gift) must have a bona fide business purpose." (4) In addition, the taxpayer must not possess a disqualifying "equity" in the property within the meaning of the statute.

Memorandum opinion at 6.

These tests complement the statutory standards discussed above. They provide a specific approach for application of the statute in gift-leaseback situations. We are satisfied that any expenditure which fails these requirements would also fail the statutory standards.

■ We recognize that for tax purposes the overall nature of a transaction must be considered. Certainly in these situations of gifts and leasebacks, the gift aspect is a

relevant factor to consider in several respects. If no independent trustee is present, then the existence of a gift brings into question whether there was in fact any "requirement" that rent be paid and also suggests the possible existence of a disqualifying equity. However, the Congress has specified that the business purpose test is concerned with the "continued use or possession" of the property. There is no justification for adding an inquiry into the origin of the lessor's title in applying this requirement.

In short, to the extent that there may be a split in the courts on this issue,[4] we adopt the majority view as applied by the Tax Court below. This is a second basis for affirmance.

### III

Even if we were not convinced that section 162(a)(3) expressly authorizes the taxpayers' position and that the majority view adopted by other courts is correct, we would still affirm the Tax Court. There is an interplay between section 162 and sections 671–678 of the Internal Revenue Code of 1954. The latter sections provide detailed rules governing the taxation of income to the beneficiary of donative trusts; typically this means less tax is paid than would be otherwise. If these rules are carefully followed, the grantor of a trust will not be taxed on the income generated by the gift; instead the beneficiaries will bear that burden.

As we noted above, the trusts in this case were valid and resulted in the income of the trusts being taxed to the beneficiaries. The interplay with section 162 occurs because a deduction for rental payments is essential if

---

4. It is not clear that there exists a true split among the courts of appeals. The Government primarily relies on *Mathews, Perry,* and *Van Zandt. Van Zandt* involved a situation in which the settlor-taxpayer was also the trustee. Similarly, in *Perry,* the Fourth Circuit found that the trustee's independence was illusory due to tightly drawn leases; this result may have been consistent with the majority view. *Mathews* did take a position more hostile to taxpayers in a similar situation. *Van Zandt* and *Mathews* were decided by the Fifth Circuit as was *Audano v. United States,* 428 F.2d 251 (5th Cir. 1970). *Audano* held for the Government in a similar situation but carefully considered traditional tests, including the reasonableness of the rental payments. 428 F.2d at 256–57. *Audano* was decided after *Van Zandt* but before *Mathews,* and has not been overruled. Thus the real conflict may be among cases in the Fifth Circuit.

the grantor-taxpayers are to gain any tax benefit from the arrangement. It is the Government's essential position that the law firm's payments to the trust amounted to gifts *but* that it was taxable income to the beneficiaries.

Following the Government's approach, sections 671–678 would produce a benefit only in cases where investment property—not used in the grantor's trade or business—is placed in trust. Persons whose assets consist largely of business property would be excluded from a tax benefit clearly provided by Congress.[5]

The Government defends this result by relying on a single sentence contained in a Senate committee report dealing with the 1954 Code. Referring to sections 671–678, the report stated: "This subpart also has no application in determining the right of a grantor to deductions for payments to a trust under a transfer and leaseback arrangement." S.Rep.No.1623, 83rd Cong., 2d Sess., pp. 364–72, *reprinted in* [1954] U.S. Code Cong. & Admin.News, pp. 4621, 5006. Obviously, this statement, contained in a lengthy committee report and not paralleled in the House report, aids the Government's case but is of questionable weight.

If we accept this strand of legislative history as conclusive, we implicitly assume that in enacting the 1954 Code, Congress considered the propriety of deductions similar to those involved in this case. Making that assumption, we are immediately faced with the fact that the two leading cases deciding this issue before 1954 were *Brown v. Commissioner*, 180 F.2d 926 (3d Cir.), *cert. denied*, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598 (1950), and *Skemp v. Commissioner*, 168 F.2d 598 (7th Cir. 1948). Both of those cases favored the taxpayers. Since Congress was rewriting the entire Code and made no pertinent change in the section dealing with business deductions, we can only conclude that it approved the result in *Brown* and *Skemp*.

We are left with a firm conviction that if section 162(a)(3) and sections 671–678 are considered *in pari materia*, the taxpayers are entitled to the rent deduction. On the other hand, if the sections are not considered together due to legislative history, we can only conclude that Congress wished to continue the law existing in 1954. In either event, the judgment of the Tax Court must be affirmed.

██ As noted by the Supreme Court: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted * * * ." *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596 (1935). *See also Knetsch v. United States*, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960). The law permits the method of tax minimization chosen by the Quinlivans.

Judgment affirmed.

---

5. Presumably, the Government's position would permit an office building to be placed in trust under these sections so long as the grantor didn't occupy any of the premises. Thus an elaborate plan of a gift of vacated office space followed by rent of other office space would satisfy the Government, although the substance of the transaction would be identical with that involved here.