I. L. VAN ZANDT and Ruth B. Van Zandt, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 21233.

United States Court of Appeals
Fifth Circuit.

Feb. 12, 1965.

R. B. Cannon, Fort Worth, Tex. (Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel), for appellants.

Crombie J. D. Garrett, Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Dept. of Justice, Shelson D. Cohen, Chief Counsel, IRS, H. S. Vandervort, Atty., IRS, Gilbert E. Andrews and Frederick E. Youngman, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

The taxpayers, Dr. Van Zandt and his wife who filed joint income tax returns for the years 1958 and 1959, seek a review of a decision of the Tax Court which denied them the right to deduct from their gross income for the two years in question amounts paid them as rent on the doctor's offices to two trusts set up by the taxpayers for the benefit of their two children. The facts are stipulated.

On April 29, 1957, Dr. Van Zandt was engaged in the practice of medicine in Fort Worth, Texas, specializing in surgery. In the practice of his profession, among other facilities, he used offices, a reception room, a laboratory, and X-ray and other equipment. On that date Dr. Van Zandt and his wife, by a single instrument, created two separate trusts naming Dr. Van Zandt as Trustee of each trust. One of these trusts was for the benefit of their son, the other for the benefit of their daughter. Each trust was made irrevocable for a term of ten years and two months. The trust instruments also contained the minimum requirements under the pertinent federal statutes which would prevent income of the trusts from being the income of the donors. Section 671 to 678, inclusive, Int.Rev.Code 1954.

On May 23, 1957, the Van Zandts executed and delivered to Dr. Van Zandt, Trustee of the two trusts, a deed to property located at 905 and 915 Fifth Avenue, Fort Worth, Texas, which was the property then occupied by Dr. Van Zandt for his office. On the same date, Dr. Van Zandt executed and delivered to himself as Trustee of the two trusts a bill of sale of X-ray and other equipment which he was then using in the practice of his profession. Simultaneously therewith, Dr. Van Zandt as Trustee of the two trusts executed two lease agreements under which he leased back to Van Zandt individually for his use in the practice of his profession, the building that he had just conveyed to himself as Trustee and the equipment as to which he had just received a bill of sale. For the two calendar years in issue, Dr. Van Zandt continued to use the premises in the practice of his profession and he paid to himself as Trustee of the two trusts, the sum of $4800 for the first year and of $6204.30 for the second year as "rent," "repairs" and "insurance."

The Van Zandts deducted the payments thus made to the trusts from the gross receipts of Dr. Van Zandt from the practice of his profession, claiming the same as ordinary and necessary business expenses.

The *effect* of these simultaneous actions is apparent to any tax practitioner and, in fact to any taxpayer who is conscious of the high rates of federal income taxation who has given the slightest thought to available methods of reducing the impact of income tax imposed by the Federal Government. However, in determining whether the Tax Court correctly held that these deductions could not be recognized, the fact that it has a salutary effect for the taxpayer is not of prime consideration. There is no principle of law that has been more clearly established than that a taxpayer may avail himself of all provisions established by the statutes for minimizing his taxes. The effect, however, does become of some significance when, as viewed by the Tax

Court, and as we must view it, a payment between two closely related individuals can be explained *only* because of the salutary effect it has on the affairs of one of the two parties.

The attack here made by the Commissioner, and accepted by the Tax Court as correct, is that deductions from gross income are fixed by statute; the statute here invoked is that which permits a deduction as a trade or business expense for rentals; and this conveyance and lease-back did not create an obligation to pay rent that was "necessary."

The relevant provision is contained in Section 162(a) (3) of the Internal Revenue Code of 1954, providing that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * (3) rentals or other payments required to be made as a condition to the continued use or possession, for the purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

The thrust of the taxpayer's contention is that, once he had conveyed this building to the trust, which he had a legal right to do, the only way that he could remain as a tenant in the building was to pay rent for occupancy; that the rent paid by him was reasonable (and this is not disputed by the Government) and that the rental payments thus met all of the requirements of "ordinary and necessary expenses."

The Government, on the other hand, takes the position that as of the moment on May 23, 1957, prior to the execution of the lease for this premises, which created the obligation on the part of the doctor to pay rent, he owned the property outright; that he was under no obligation and therefore no necessity to pay rent for the "continued use or possession" of the property; that he then and there decided to effect a tax saving by simultaneously executing two documents, the first to place title to the property in himself as Trustee, and the second to lease it back to himself as tenant; that in determining whether these payments were "ordinary and necessary expenses" the acts must be viewed as a whole, that is the conveyance and lease-back, rather than having them fragmented and viewing the expenses required to be paid under the lease without reference to the simultaneous act of conveying his property to the trusts that necessitated such a lease.

Taxpayers argue that once it is established that the trusts were "independent" within the contemplation of the appropriate sections of the Internal Revenue Statutes, dealings by them with the Trustee of the trusts should be assumed to be at arm's length so long as they were not distorted in amounts such as payments in excess of the fair rental value. The principal case relied upon by taxpayers is Skemp v. Commissioner, 7 Cir., 168 F.2d 598. In that case, the facts were quite similar to those before us with the exception that the trusts there were created for twenty years and the property, upon termination of the trusts, was not to revert to the original donors, and to the further exception that there was a bank trustee. Furthermore, the property transferred contained considerably more space than was rented back to the doctor for his use. Thus, there may have been a proper business purpose of conveying the property to the trustees for management and payment of income to the beneficiaries, since the whole income did not come from the grantor. The Court of Appeals for the Seventh Circuit reversed the determination by the Tax Court that held, as it did here, that the rent paid by the doctor for his office in the building which he had previously owned was not deductible as ordinary and necessary business expense. That Court declined to consider the conveyance of the building and the lease-back as a whole in determining whether the rent payments were ordinary and necessary.

The Government, on the other hand, relies heavily on a decision by this Court

in W. H. Armston Company v. Commissioner of Internal Revenue, 5 Cir., 188 F.2d 531, 26 A.L.R.2d 698, which we think is directly in point with respect to whether the payment of rent to one-self or to one's alter ego is to be considered separately from a transfer of the rent producing property which takes place as part of a single transaction. In the Armston case, this Court held that where a wholly owned corporation 'sold' heavy equipment needed by the company in a contracting business to the wife of the principal stockholder and, at the same time, took a lease-back from her so that the company could continue to have the use of the equipment in its business, the substantial rental payments made by the company to the wife were not deductible as ordinary and necessary business expenses. The Court there said, "The evidence here conclusively reveals that the Company's right to use the equipment supposedly sold to Catherine Armston was in no wise affected by the alleged transfer of title. The only logical motive and purpose of the arrangement under consideration was the creation of 'rentals', which would form the basis for a substantial tax deduction, and thereby reduce the Company's income and excess profits taxes from the year 1943. It was merely a device for minimizing tax liability, with no legitimate business purpose, and must therefore be disregarded for tax purposes." 188 F.2d 531, 533.

In view of the fact that at the very moment that the property here was conveyed to the trustee, the trustee became obligated to convey it back under lease to the original transferor, it seems clear that we do not have the normal relationship that exists when an "independent" trust is created, and recognized fully for tax purposes, because the trustee of such trusts is required to handle the affairs of the trust under the strict principles of a fiduciary in the management of the property. Here, with respect to the only asset, the trustee had nothing whatever to do in the management of the trusts, except to receive the income which

had been predetermined. The whole principal amount of the trust was irrevocably committed to the possession of the grantor the moment the trust was created. Thus, it seems to us inevitably we must look at the original conveyance of the property together with the execution of the lease-back as a single transaction. Thus viewing it, we conclude that the *obligation* to pay rent resulted not as an ordinary and necessary incident in the conduct of the business, but was in fact created solely for the purpose of permitting a division of the taxpayer's income tax. Rent paid to discharge an obligation so created is itself not an ordinary and necessary business expense. W. H. Armston Co. v. Commissioner, supra.

Neither this decision nor Armston condemns outright and absolutely all transfers of property (and normal income tax incidents) as between a taxpayer and closely related parties such as corporation-stockholder, corporation-officer, corporation-director (and vice versa) or individuals and genuine trusts, partnerships, etc., which result in economic benefit and income tax advantages. As Armston phrased it, the " * * * principal question is whether" the sale and lease-back " * * * should be disregarded as a subterfuge for income tax purposes." 188 F.2d 531, 532. In answering that question, the Court then proceeded to tick off a number of factors which proved conclusively that there was no good business purpose for the transaction.

Whether viewed as a single or a multi-step transaction, the same is true here. Although the question is not before us, we recognize that from the standpoint of taxability of income of the trust, not deductions which a payor of that "income" may take, this was a perfectly valid trust. It met not only the minimum but all of the statutory tests so that its income will be taxed to it, not the settlors. Nonetheless, the fact remains that there was no real business purpose served by this intricate transaction. The only thing accomplished was

to funnel family income to children in a way that allowed a deduction to the payor and taxation to the recipients at reduced rates. Of course, as we have stated, tax advantages are not outlawed. And frequently it is the impact of taxes which alone makes the trade an economically feasible one.

As we should be careful lest our ruling circumscribe the flexibility which the law—even income tax law—accords to businessmen in determining what is good business purpose, we emphasize the proposition that the result ultimately depends on the factual evaluation of the particular case. Here, factors such as the short term of the trust, reversion to the settlors, predetermination of the right to possession of the property, and the like, while perfectly permissible so far as taxability of the trust and the settlors goes, bear heavily on the element of business purpose. In this light, and the significant differences we point out here, we regard our holding as consistent with Skemp v. Commissioner, 7 Cir., 1948, 168 F.2d 598.

The judgment of the Tax Court is affirmed.