**Richard CHACE and Frances L. Chace, his wife, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

No. 67–278–Orl–Civ.

United States District Court
M. D. Florida,
Orlando Division.

July 10, 1969.

Ward, Bradford & Oswald, Philip A. Tharp, Orlando, Fla., for plaintiffs.

Kendall H. Wherry, Asst. U. S. Atty., Orlando, Fla., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW.

DUNCAN, Senior District Judge.

Plaintiffs, residents of the Middle District of Florida, instituted this action against the defendant for refund of Federal income taxes and assessed interest paid by the plaintiffs for the years 1963, 1964 and 1965 in the approximate amounts of $1186.21, $1605.00 and $1579.92 respectively, plus interest provided by law.

The facts are before the court on Stipulation and testimony of the interested parties. The controversy centers around a short term trust created by one of the taxpayers.

The plaintiffs Richard Chace and Frances L. Chace are husband and wife residing in Orange County, Florida. Richard Chace is a practicing dentist in the City of Orlando. Mrs. Chace is a housewife.

In 1948 the plaintiffs jointly purchased an office building located at 621 East Colonial Drive in Orlando. Thereafter, the building was used by Dr. Chace as an office in the practice of his profession. At the time the trust was created the plaintiffs owned the building free and clear of all encumbrances.

On April 22, 1963, an agreement designated as the "Chace Short Term Trust" was entered into between taxpayer Dr. Chace as Settlor, and taxpayer Mrs. Chace and Juddson E. Shephard as Trustees. Juddson E. Shephard, co-trustee with Mrs. Chace, is a practicing psychiatrist in Orlando, and is married to the sister of Mrs. Chace. The agreement provided that the trust should have a term of ten years and one day, and that at the expiration thereof the trust corpus was to revert to the Settlor. The pertinent

parts of this rather long and all inclusive document are set out in footnote [1].

On April 22, 1963, the same day the trust agreement was executed, Mrs. Chace and Dr. Shephard as trustees and lessors, leased the office building to Dr. Chace as lessee under a written lease, providing for a monthly rental of $250.00 for and initial term of three years. The agreement contained an option clause under which the lessee could renew the lease for three additional periods of three years each. Another clause contained in the lease provided that all extensions were to "be at the same rental as the original term."

By Warranty Deed dated May 2, 1963, Dr. and Mrs. Chace conveyed the land upon which the office building was situated to the trust. The trust has owned no other property since its creation.

For the year 1963 Dr. Chace paid the trustees as rental $2248.35, and $3000.00 for each of the years 1964 and 1965. It is stipulated that these amounts represent reasonable rent for the premises.

Plaintiffs in their joint tax returns for the years 1963, 1964 and 1965 claimed business expense deductions for the amounts paid as rent. The District Director of Internal Revenue at Jacksonville, Florida, disallowed these rental expense deductions. The plaintiffs paid the deficiency for the taxable years aforesaid and instituted this action to recover the amounts of the tax. § 162 (a) (3) Internal Revenue Code of 1954 provides:

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

It is the contention of the plaintiffs that the purposes of the trust and the payment of the rental by Dr. Chace was a business expense within the meaning of the statute, and that they were entitled to deduct it from their gross income.

Sometime after the trust agreement was entered into, Dr. Chace determined that he needed additional office space to accommodate his practice. Some discussion was entered into between him and the trustees concerning the question. He states that he had acquired another piece of property at another location with some thought to erecting another building, but did not do so. It was determined that by remodeling the existing building such space could be made available. A loan was obtained from the bank by the trustees for the purpose of making such improvements, and thereafter

---

1. "ARTICLE II

DISTRIBUTION OF INCOME AND PRINCIPAL

1. The income of the trust shall be collected by the Trustees and shall be accumulated for RICHARD CHACE, JR., son of the Settlor and SUSAN CHACE, daughter of the Settlor; income may be used for the college education of either or both of said beneficiaries including, but not by limitation, study for a degree in dentistry or other training, profession or occupation, including any advanced specialization therein; income may be used, in the Trustees' discretion, to meet the emergency needs of support and maintenance of either or both of the said beneficiaries.

2. In the event of the death of both of the said beneficiaries during the term of this trust, this trust shall terminate and distribution of the said trust shall occur as if the entire term hereof had run.

3. At the time for termination of this trust under the terms hereof, the Trustees shall distribute all accrued income of the trust to the Settlor's said son and daughter, in equal shares, or to the survivor of them, or if neither shall survive, to their executors, administrators, and assigns in equal shares.

4. At such distribution time, the principal or corpus of this trust shall be distributed by the Trustees to the Settlor, his executors, administrators, and assigns."

Dr. Chace continued to occupy the building at the same rent as he had theretofore been paying.

Dr. Chace further testified that in setting up the trust, the tax advantages to be derived therefrom were considered, and that the prime purpose was to provide a fixed income for his two children, a son and daughter who were at that time beginning their college studies. Dr. Chace also testified that his son had decided to become a dentist, and that, realizing the heavy expense incident to such medical education extending over a long period of time, the trust was created in order that in the event of the father's death or incapacity, the rental from the property would afford the means of carrying on and completing the son's education.

The trustees testified that under the terms of the trust agreement they managed the property, paid the taxes, collected the rents and distributed the proceeds to the beneficiaries.

It is the contention of the Government that the setting up of the trust was a mere "sham", that the amount of the rent was not a necessary business expense within the meaning of the statute, and that Dr. Chace retained an equitable interest in the property. We do not like to use the word "sham" in referring to this situation. It is a bit harsh. We do agree however, that there is merit in the Government's contention that the prime purpose for setting up the trust was to create a vehicle to reduce the amount of income tax which would be paid by the plaintiffs. This, of course, is not a violation of the law if the creation of the trust and the trust were legal. In the creation of the trust the amount of rent paid under its terms must have been for a business purpose, as required by the statute.

Dr. Chace for a number of years, had owned the building and occupied it exclusively, there being no other space available for other tenants. The benefits derived by the beneficiaries under the trust were quite modest after all the expenses incident to the management of the trust were paid. Prior to the time the trust was created, of course, Dr. Chace paid no rent.

We believe that the facts in this case clearly fall within the holding in Van Zandt v. Commissioner of Internal Revenue, 341 F.2d 440 (5th Cir. 1965) cert. denied 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed. 2d 62 (1965). The facts in the two cases are almost identical, except in the *Van Zandt* case, Dr. Van Zandt was the trustee, and the trust agreement was for ten years and two months. Judge Tuttle, Chief Judge, stated at page 441:

"The *effect* of these simultaneous actions is apparent to any tax practitioner and, in fact to any taxpayer who is conscious of the high rates of federal income taxation who has given the slightest thought to available methods of reducing the impact of income tax imposed by the Federal Government. However, in determining whether the Tax Court correctly held that these deductions could not be recognized, the fact that it has a salutary effect for the taxpayer is not of prime consideration. There is no principle of law that has been more clearly established than that a taxpayer may avail himself of all provisions established by the statutes for minimizing his taxes. The effect, however, does become of some significance when, as viewed by the Tax Court, and as we must view it, a payment between two closely related individuals can be explained *only* because of the salutary effect it has on the affairs of one of the two parties."

In *Van Zandt* the taxpayer relied heavily upon Skemp v. Commissioner of Internal Revenue, 168 F.2d 598 (7th Cir. 1948), just as the taxpayers do in this case. In discussing that case, Judge Tuttle, 341 F.2d at page 442 stated:

"In that case, the facts were quite similar to those before us with the exception that the trusts there were created for twenty years and the property, upon termination of the trusts, was not to revert to the original donors, and to the further exception that

there was a bank trustee. Furthermore, the property transferred contained considerably more space than was rented back to the doctor for his use. Thus, there may have been a proper business purpose of conveying the property to the trustees for management and payment of income to the beneficiaries, since the whole income did not come from the grantor."

We think this distinction between the *Skemp* case and the case before us is clearly revealed. Further discussing the facts in *Van Zandt* Judge Tuttle 341 F.2d at page 443 continued:

"In view of the fact that at the very moment that the property here was conveyed to the trustee, the trustee became obligated to convey it back under lease to the original transferor, it seems clear that we do not have the normal relationship that exists when an 'independent' trust is created, and recognized fully for tax purposes, because the trustee of such trusts is required to handle the affairs of the trust under the strict principles of a fiduciary in the management of the property."

After reviewing other facts with respect to the *Van Zandt* case, the court stated:

"Thus viewing it, we conclude that the *obligation* to pay rent resulted not as an ordinary and necessary incident in the conduct of the business, but was in fact created solely for the purpose of permitting a division of the taxpayer's income tax. Rent paid to discharge an obligation so created is itself not an ordinary and necessary business expense. * * * As Armston phrased it, the '* * * principal question is whether' the sale and lease-back '* * * should be disregarded as a subterfuge for income tax purposes.' [W. H. Armston Co. v. Commissioner of Internal Revenue, 5 Cir.], 188 F.2d 531, 532."

We believe that there was no real business purpose served by this transaction. The only thing accomplished was to form a family income for children in a way that allowed a deduction to the taxpayers and taxation to the recipients at reduced rates.

The statute is clear in its provisions that before deductions for trade or business may be made, "the taxpayer has not taken or is not taking title or in which he has no *equity*." [Emphasis supplied.] Internal Revenue Code of 1954, § 162(a) (3).

We are unable to agree with taxpayer's contention that he had no equity in the property, although at the time the case was tried he had conveyed by warranty deed to his wife, all of his right, title and interest in and to the property owned by the trust. However, the conveyance was not made until after the years in question. We do not believe it has any application here.

The lease-back agreement between Dr. Chace and the trustees under the provisions of the trust clearly reserved the right of the lessee to renew his lease at the expiration of each three year period. This was not a condition of the lease that could have been disregarded by the trustees in their management of the property.

In their testimony both Mrs. Chace and Dr. Shephard expressed the view that they had absolute right to sell or dispose of the property, although they had no intention of doing so. If the trustees had disposed of the property by sale or conveyance, it would have been subject to the rights of Dr. Chace, the lessee, under the terms and provisions of his lease-back agreement, and had the property been sold or exchanged for other property, the reversionary interest, whatever it may have been was vested in Dr. Chace.

We believe that Dr. Chace had an equitable interest in the property which could not have been defeated. It thus would have brought the transaction clearly within the exclusionary provisions of the statute with respect to the "no equity" interest.

It is our conclusion that the plaintiffs are not entitled to recover the amount of the taxes paid by them.