FRANK L. BUTLER AND CECELIA F. BUTLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8138-73.　　Filed November 11, 1975.

*Joe N. Pigott,* for the petitioners.
*Thomas R. Thomas,* for the respondent.

---

OPINION

FEATHERSTON, *Judge:* Respondent determined the following deficiencies in petitioners' income tax:

| Year | Amount |
|------|--------|
| 1970 | $1,450.81 |
| 1971 | 1,331.03 |

The only issue for decision is whether petitioners are entitled to deductions under section 162(a)(3)[1] for rental payments made during 1970 and 1971 in respect of an office building which petitioner Frank L. Butler transferred to, and leased back from, a trust.

The facts are all stipulated.

Petitioners Frank L. Butler and Cecelia F. Butler were legal residents of McComb, Miss., at the time they filed their petition. They filed joint Federal income tax returns for 1970 and 1971 with the Internal Revenue Service Center, Chamblee, Ga.

Prior to April 30, 1963, Frank L. Butler (hereinafter petitioner or Dr. Butler) owned a building in McComb, Miss., which he used as his office for the practice of medicine. On that date, he entered into a trust agreement whereby he transferred the building to the Mechanics State Bank of McComb (hereinafter the bank or the trustee), as trustee. The trustee was directed to pay so much of the income from the building to Marilyn Kay Butler (Marilyn) and James Marc Butler (James), as it may deem necessary for their use, pleasure, and general welfare and to accumulate and invest the balance for their benefit.[2] The trust is to terminate at the end of 11 years, and at that time the accumulated income will be paid to Marilyn and James, or their respective estates if they are deceased, and the corpus will be distributed to petitioner Cecelia F. Butler. The office building was the only property transferred to the trust.

On April 30, 1963, the day the trust was created, the trustee leased the property back to Dr. Butler for a term of 11 years in accordance with a prearranged plan. The lease called for rental payments which were reasonable in amount in comparison with similar property in the same general locality. Dr. Butler used the

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

[2] Although not stipulated, both petitioner and respondent indicate in their briefs that the beneficiaries of the trust, Marilyn and James, were petitioners' children and in 1963 were minors.

entire building in his medical practice. Petitioners did not take deductions for depreciation on the building or interest on the mortgage indebtedness outstanding against the building. This indebtedness was paid by the trustee. However, petitioners deducted the 1970 and 1971 rental payments made to the trustee, and respondent disallowed those deductions.

The deductibility of rental payments made in respect of property sold or given to a short-term trust and leased back to the vendor or the trust's grantor has been the subject of a series of decisions by the Court of Appeals for the Fifth Circuit, to which an appeal would be taken in this case. See *Mathews v. Commissioner,* 520 F.2d 323 (5th Cir. 1975, 36 AFTR 2d 75-5965, 75-2 USTC par. 9734), revg. 61 T.C. 12 (1973); *Wiles v. Commissioner,* 491 F.2d 1406 (5th Cir. 1974), affg. without published opinion 59 T.C. 289 (1972); *Audano v. United States,* 428 F.2d 251 (5th Cir. 1970); *Chace v. United States,* 422 F.2d 292 (5th Cir. 1970); *Furman v. Commissioner,* 381 F.2d 22 (5th Cir. 1967), affg. 45 T.C. 360 (1966); *Van Zandt v. Commissioner,* 341 F.2d 440 (5th Cir. 1965), cert. denied 382 U.S. 814 (1965), affg. 40 T.C. 824 (1963); *W. H. Armston Co. v. Commissioner,* 188 F.2d 531 (5th Cir. 1951), affg. 12 T.C. 539 (1949). The factual situations in these cases vary somewhat from each other and from the instant case, and the deductibility of rental payments in such circumstances depends upon a factual evaluation of the particular case. However, we think the application of the legal standards enunciated in those cases compels the conclusion that petitioners are not entitled to deductions for the "rent" paid to the trust. See *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Section 162(a)(3) provides that there shall be allowed as a deduction all the "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." This includes "rentals or other payments required to be made as a condition to the continued use or possession" of property to which the taxpayer has not taken title or in which he has no equity.

The cases cited above hold that a gift in trust and a contemporaneous leaseback must be viewed as a single, integrated transaction. Prior to the transaction in the instant case, Dr. Butler owned the property outright. He had no obligation to pay rent for the "continued use or possession" of the property. On

April 30, 1963, he transferred temporary legal title to the trust, but the trust had no discretion as to rental of the building. Under the prearranged agreement, signed the same day that the trust was created, Dr. Butler leased the property from the trust and the trust undertook to currently distribute the rent to the beneficiaries of the trust, Marilyn and James, or accumulate the rent for later distribution to them. At the end of an 11-year period, the property is to be conveyed to petitioner Cecelia F. Butler.

No business purpose has been shown for this orchestrated, intrafamily transaction apart from the fact that Dr. Butler would be able to spread his taxable income among several taxpayers in lower rate brackets. As to the importance of a business purpose, the Court of Appeals in *Van Zandt v. Commissioner,* 341 F.2d at 443-444, said:

we must look at the original conveyance of the property together with the execution of the lease-back as a single transaction. Thus viewing it, we conclude that the *obligation* to pay rent resulted not as an ordinary and necessary incident in the conduct of the business, but was in fact created solely for the purpose of permitting a division of the taxpayer's income tax. Rent paid to discharge an obligation so created is itself not an ordinary and necessary business expense. * * *
     * * *
there was no real business purpose served by this intricate transaction. The only thing accomplished was to funnel family income to children in a way that allowed a deduction to the payor and taxation to the recipients at reduced rates.

Petitioners make a series of arguments, but each of them has been answered by the foregoing opinions. First, petitioners argue that the bank was an independent trustee with a legal obligation to collect the rent, reasonable in amount, or evict Dr. Butler. In the recent case of *Mathews v. Commissioner,* 36 AFTR 2d at 75-5966, 75-2 USTC par. 9734, also dealing with a prearranged lease, the court rejected the independent-trustee and reasonable-rent arguments, stating:

In *Van Zandt,* before which Taxpayers flee, the arrangement was very similar. The only real difference—the one urged by Taxpayers—is in the trustee's identity. *Van Zandt* took no chances—or perhaps too many—naming himself trustee. But this was but one of several factors. The outcome would not have differed had there been an outside independent trustee. We think *Van Zandt* teaches that it is not sufficient merely to serve up some "business purpose" as some of the cases put it. The fact taxpayers can conjure up some reason why a businessman would enter into this sort of arrangement—tax consequences aside—does not foreclose inquiry. Rather there must be

"economic reality," *Furman v. Commissioner,* 1966, 45 T.C. 360, aff'd per curiam, 5 Cir. 1967, 381 F.2d 22.

In deciding the federal questions of income tax law, we must examine transactions with substance rather than form in mind. If we stood at the top of the world and looked down on this transaction—ignoring the fly-speck of legal title under state law—we would see the same state of affairs the day after the trust was created that we saw the day before.

We think the critical element of this is the trustee's pre-execution agreement with Taxpayers which for all practical purposes assured them the property constituting the essential plant facility for Taxpayers' otherwise wholly-owned business would be available throughout the term of the trust. Taxpayer would distinguish *Van Zandt* on this point because the initial lease there covered the entire trust term, whereas this one merely covered one year—with a year-to-year option to renew. Practically, however, the distinction is without a difference. Taxpayers' effective control of the property for the duration of the term was practically assured, notwithstanding the trustee's independence. Similarly, the fact rent negotiations produced "reasonable" results is totally irrelevant. Any bargaining is simply not at arm's length, because any rent exceeding expenses stays in the Mathews family.

In short, before the trust's creation Taxpayer operated his business on and with necessary property—all under his complete control. The same was true afterward—except he hoped some of his income had been siphoned off to his children. As in *Van Zandt* what was carefully planned to achieve a total result cannot be split into separate parts.

Deduction of rental payments to such "economic nullities" is not contemplated by sec. 162(a)(3). [Fn. refs. omitted.]

See also *Van Zandt v. Commissioner, supra* at 443; *Chace v. United States, supra* at 292.[3]

Second, petitioners point out that, at the termination of the trust, the rented property will pass to petitioner Cecelia F. Butler rather than to Dr. Butler himself. However, under the foregoing reasoning of the Court of Appeals in the *Mathews* case, the fact that the property will ultimately pass to petitioner Cecelia F. Butler is not decisive. During the term of the prearranged 11-year lease, the property will continue to be available to, and subject to the control of, Dr. Butler. The rental payments will be paid or accumulated for the benefit of his children. The trustee has no discretion whatever in this respect, except to decide how much of the rent money will be distributed to the children and how much will be accumulated. Under the foregoing reasoning of the *Mathews* opinion, the income tax consequences for 1970 and

---

[3] On similar facts, the 4th Circuit in *Perry v. United States,* 520 F.2d 235 (4th Cir., 1975, 36 AFTR 2d 75-5500, 75-2 USTC par. 9629), recently treated a contemporaneous transfer-leaseback transaction with a so-called independent trustee as a single transaction which lacked a business purpose and denied rental deductions to the settlor of the trust.

1971 do not depend upon which one of the joint-return-filing petitioners, Dr. Butler or his wife, will become the owner of the property at the termination of the trust.

Petitioners argue next that the property was placed beyond the reach of potential malpractice claimants or attachment by any of Dr. Butler's creditors. Significantly, this is purely a legal argument. The stipulated facts do not show the claims of potential creditors were considered when the trust was created. In *Mathews,* at n. 7, however, the Court of Appeals stated:

Taxpayers contend their desire to (i) isolate the property from liability, and (ii) discourage employees from aspiring to partnership constitutes * * * business purposes. As to (i) it is not impressive since taxpayers' equitable and reversionary interests—as well as rights under the lease—are probably reachable by creditors. * * *

While Dr. Butler did not retain a reversionary interest which could be reached, his leasehold interest would be subject to the rights of his creditors. Unless and until his creditors take the property, the lease permits him to retain control.

Petitioner has placed great emphasis on *Skemp v. Commissioner,* 168 F.2d 598 (7th Cir. 1948), revg. 8 T.C. 415 (1947). However, in the *Skemp* case, the settlor of the trust, a physician, used only a portion of the transferred property for his own practice, the remainder of the building being rented to others for unrelated general business use. The Court of Appeals in *Van Zandt,* 341 F.2d at 442, noted this distinction in *Skemp,* stating:

the property transferred contained considerably more space than was rented back to the doctor for his use. Thus, there may have been a proper business purpose of conveying the property to the trustees for management and payment of income to the beneficiaries, since the whole income did not come from the grantor. * * *

The stipulated facts in the instant case do not show that petitioner created the trust and transferred his office building to the trust in order to obtain managerial expertise or for any other business purpose. Dr. Butler leased and used the entire building. The trustee held bare legal title to the leased building and served only as a conduit through which the rental payments were passed to Dr. Butler's children.

We conclude that the legal principles enunciated by the decisions of the Court of Appeals for the Fifth Circuit, cited

above, require a holding that Dr. Butler's rental payments to the trust are not deductible under section 162(a)(3).

To reflect the foregoing,

*Decision will be entered for the respondent.*