RICHARD A. SERBOUSEK and MARY J. SERBOUSEK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent JAMES E. RAMSAY and CONSTANCE RAMSAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Serbousek v. Commissioner
Docket Nos. 8351-74, 8368-74.
United States Tax Court
T.C. Memo 1977-105; 1977 Tax Ct. Memo LEXIS 336; 36 T.C.M. (CCH) 479; T.C.M. (RIA) 770105; April 11, 1977, Filed *336 Petitioners owned real property which they leased to their medical partnership. On August 30, 1968, petitioners conveyed the property in trust for the benefit of their respective children for 10 years and 10 days with the remainder to their wives. The following day, petitioners caused their partnership to lease the property back from the trustee for use in their medical practice. Held, on the facts, the rental expenses paid constitute ordinary and necessary business expenses under sec. 162(a)(3), I.R.C. 1954. John J. Gross, Stephen T. McGill, and Peter J. Hoagland, for the petitioners. Albert B. Kerkhove, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax for the year 1971: Dkt. No.
Petitioners
Deficiency
8351-74
Richard A.
$886.06
and Mary J.
Serbousek
8368-74
James E. and
963.96
Constance Ramsay
These cases were consolidated for purposes of trial, briefing, and opinion. Richard A. Serbousek and James E. Ramsay will be hereinafter referred to individually as Serbousek or Ramsay and referred to collectively as the petitioners. Due to a concession by petitioners, the remaining issue *337 for decision is whether in computing petitioners' distributive share of partnership income in 1971, their medical partnership is entitled to a rental expense deduction under section 162(a)(3)[1] for payments made for the use of property which petitioners had previously transferred to a trust. FINDINGS OF FACT Some facts were stipulated and are so found. Petitioners are medical doctors and were equal partners in a medical partnership doing business as the Atkinson Clinic (hereinafter The Clinic) in Atkinson, Nebraska, from 1961 through 1972. The partnership maintained its books and records according to the cash receipts and disbursements method of accounting. At the time their petitions in this case were filed, petitioners and their wives resided in Atkinson, Nebraska. Each petitioner and his respective spouse filed a joint Federal income tax return for the calendar year 1971 with the Internal Revenue Service Center in Ogden, Utah. In 1953, Ramsay was engaged in the practice of medicine as a sole practitioner in Atkinson, Nebraska. In that year, he constructed a clinic building *338 on land which he and his wife had previously acquired from the Atkinson Memorial Hospital. The building contained some 1,950 square feet and was specifically designed as a doctor's office. During 1959 and 1960, an adjoining parcel of land was acquired and the building was extensively remodeled to enhance its suitability as a medical clinic. The building in its improved condition contained six small examining rooms, two treatment rooms, a consulting room, library, storage rooms, and a waiting area large enough to accommodate 25 people. Sometime in 1960 or the early part of 1961, Ramsay contacted Serbousek and suggested that Serbousek move to Atkinson to join him as a partner. In April 1961 Serbousek moved to Atkinson and the two physicians formed the Atkinson Clinic, a partnership in which they had equal shares. On June 20, 1961, petitioners acquired the land and clinic building (hereinafter the realty) as tenants in common. [2] *339 From that date until 1968, petitioners leased the realty to The Clinic for use in their medical practice. In 1962, petitioners became concerned over the business and personal conflicts which might arise from their ownership of the realty in the event of the partnership's dissolution. Petitioners discussed this matter with their accountant during 1962, and considered the use of a trust as a possible solution to the problem. Petitioners were advised by their accountant, however, that the tax issues involved in the contemplated gift and leaseback arrangement had not been resolved. For various reasons, including the uncertain tax consequences involved, petitioners took no further action until 1968. On August 30, 1968, petitioners executed as grantors, a 10-year and 10-day irrevocable Trust Agreement creating the James E. Ramsay and Richard A. Serbousek Trust (hereinafter the Trust). The beneficiaries of the Trust were petitioners' children, John and Cynthia Ramsay and Mark and Leann Serbousek. Petitioners' wives were the remaindermen of the Trust. On that same day, petitioners as grantors, together with their wives, conveyed the realty *340 to The Omaha National Bank, trustee. [3] The fair market value of the realty was $50,000. Subsequently, on or about September 1, 1968, the trustee and The Clinic entered into a 10-year net lease providing for petitioners' use of the realty held by the Trust. [4] *341 Pursuant to its fiduciary responsibilities, the trustee contacted the proper authorities on an annual basis to ascertain whether in fact The Clinic had paid the insurance premiums and real estate taxes, as required under the terms of the net lease. In addition, *342 the bank's trust officer who maintained responsibility for the supervision of the Trust was advised by the bank's internal operations division if the required rental payments were not received within two to three weeks of the due date. On its 1971 Federal partnership return, The Clinic deducted the $4,400 paid to the Trust in that year as a rental expense under section 162(a) (3). In a statutory notice of deficiency, respondent disallowed the claimed deduction and thereby increased each petitioner's distributive share of partnership income for 1971 by $2,200. OPINION Petitioners owned certain realty as tenants in common which they leased to their medical partnership. In 1968 they transferred the realty to a short-term trust for the benefit of their children. Petitioners (acting in their capacity as partners) shortly thereafter leased the realty from the trustee. [5] The issue presented is whether the rental payments made pursuant to the lease in 1971 may be deducted as an ordinary *343 and necessary business expense under section 162(a) (3). [6]
While the question is primarily one of fact, the cases are not in complete harmony with respect to the applicable test for deductibility of rental payments by the grantor in a gift and leaseback arrangement. See Perry v. United States, 520 F.2d 235 (4th Cir. 1975), cert. denied 423 U.S. 1052 (1976); Brooke v. United States, 468 F.2d 1155 (9th Cir. 1972); Van Zandt v. Commissioner, 341 F.2d 440 (5th Cir. 1965), affg. 40 T.C. 824 (1963), cert. denied 382 U.S.814 (1965); Brown v. Commissioner, 180 F.2d 926 (3d Cir. 1950), revg. 12 T.C. 1095 (1949), cert. denied 340 U.S. 814 (1950); Skemp v. Commissioner, 168 F.2d 598 (7th Cir. 1948), revg. 8 T.C. 415 (1947); Mathews v. Commissioner, 61 T.C. 12 (1973), *344 revd. 520 F.2d 323 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976); Oakes v. Commissioner, 44 T.C. 524 (1965). In Mathews we recently dealt with this issue and set forth our views as to appropriate tests of deductibility. [7] The case involved a funeral director and his wife who transferred property used in the husband's trade or business to four 10-year trusts for the benefit of their four minor children. The taxpayers retained a reversionary interest in the property. Through a prearranged agreement with the trustee, the husband leased the property back for a reasonable rental on the date the trusts were executed. In holding for the taxpayer we stated that a taxpayer may deduct rental payments under section 162(a) (3) in a gift and leaseback arrangement *345 only if the following requirements are met: (1) "The grantor must not retain 'substantially the same control over the property that he had before' he made the gift." (2) "The leaseback should normally be in writing and must require payment of a reasonable rental." (3) "The leaseback (as distinguished from the gift) must have a bona fide business purpose." (4) In addition, the taxpayer must not possess a disqualifying "equity" in the property within the meaning of the statute. We held that the taxpayer met those requirements, and we allowed the rental deduction. On appeal, the Court of Appeals for the Fifth Circuit disagreed with our factual determination that the taxpayer did not retain substantially the same control over the property that he had before he made the gift and disallowed the claimed deduction. In so doing, however, the court approached the issue in the following manner: The fact taxpayers can conjure up some reason why a businessman would enter into this sort of arrangement--tax consequences aside--does not foreclose inquiry. Rather there must be "economic reality", Furman v. Commissioner, 1966, 45 T.C. 360, affd. per curiam, 5 Cir., 1967, 381 F.2d 22. * * *
In short, *346 before the trust's creation Taxpayer operated his business on and with necessary property--all under his complete control. The same was true afterward-- except he hoped some of his income had been siphoned off to his children. As in Van Zandt what was carefully planned to achieve a total result cannot be split into separate parts. Deduction of rental payments to such "economic nullities" is not contemplated by § 162(a) (3). [Fn. references omitted] [Mathews v. Commissioner, 520 F.2d 323, 325 (5th Cir. 1975).] Respondent urges in effect that we abandon the requirements delineated in our opinion in Mathews in favor of an "economic reality" test similar to that set out by the Fifth Circuit in determining the deductibility of the rental payments in question.Thus, he argues, the transaction before us lacks "economic reality" when viewed as a whole and the rental payments are, therefore, not deductible. In the alternative, respondent urges that we broaden the business purpose test we set forth in Mathews to require a business purpose for the gift as well as the leaseback. Specifically, he argues that the purported rental payments are not deductible because the transaction when viewed *347 as a whole lacks a business purpose and was undertaken solely to minimize tax liabilities. We have previously rejected respondent's argument concerning the necessity of establishing a business purpose for making the figt in question and we adhere to that position. See Oakes v. Commissioner, supra.Other courts have also rejected this test. See Mathews v. Commissioner, 520 F.2d 323 (5th Cir. 1975); Brooke v. United States, supra.But see Perry v. United States, supra.
On the other hand, we have previously embraced the concept of "economic reality" in the gift and leaseback area. See Furman v. Commissioner, 45 T.C. 360, 366 (1966), affd. 381 F.2d 22 (5th Cir. 1967); Penn v. Commissioner, 51 T.C. 144, 152 (1968); Oakes v. Commissioner, supra. While a universal definition of the concept is somewhat elusive, we indeed recognize that section 162(a) (3) does not permit a deduction for rental payments where the transaction giving rise to the necessity of paying such rent has no substance apart from its anticipated tax consequences. Cf. Knetsch v. United States, 364 U.S. 361 (1960); Gregory v. Helvering, 293 U.S. 465 (1935); Frank Lyon Co. v. United States, 536 F.2d 746 (8th Cir. 1976), *348 cert. granted U.S. (Feb. 22, 1977); Goldstein v. Commissioner, 364 F.2d 734 (2d Cir. 1966), cert. denied 385 U.S. 1005 (1967); Brooke v. United States, supra; Van Zandt v. Commissioner, 341 F.2d 440 (5th Cir. 1965), affg. 40 T.C. 824 (1963), cert. denied 382 U.S. 814 (1965); sec. 1.704-1(b) (2), Income Tax Regs.
Unlike respondent, however, we do not believe that adherence to the requirements for deductibility we enumerated in Mathews requires that we ignore the "economic reality" of the transaction. Nor do we believe that adherence to those enumerated requirements would necessarily produce results which are inconsistent with those reached by courts which, like the Fifth Circuit, appear to rely exclusively on an "economic reality" test. We have studied the opinion by the Court of Appeals for the Fifth Circuit in Mathews v. Commissioner, 520 F.2d 323 (5th Cir. 1975), and find nothing therein that would indicate otherwise. [8]
In applying the four requirements set forth by this Court in Mathews *349 to the present facts, we disagree with respondent's next argument: that the transaction fails to meet such requirements. Petitioners clearly relinquished control of their beneficial ownership of the realty on August 30, 1968, when they transferred the realty in trust to The Omaha National Bank, an independent trustee. Petitioners were not the trustees, the leaseback was not prearranged, and petitioners did not retain a reversionary interest in the realty. Compare Perry v. United States,520 F.2d 235 (4th Cir. 1975), cert. denied 423 U.S. 1052 (1976); Van Zandt v. Commissioner,supra.
Indeed, the evidence indicates that the trustee had the right and oportunity to negotiate regarding the leaseback and entered such lease under terms which were for the primary benefit of the trust beneficiaries, rather than the grantors. While the lease effectively ran the full term of the ten-year trust, petitioners' continued occupancy throughout that period was subject to the terms of the negotiated lease. Upon the termination of the trust, the trustee was required to convey the realty to Mary J. Serbousek and Constance Ramsay, as tenants in common, regardless of their marital status at that time. *350 We therefore conclude that petitioners did not retain substantially the same control over the realty that they had prior to making the gift. Petitioners clearly meet the second requirement, namely, the payment of a reasonable rental pursuant to a lease agreement. The written lease agreement required rental payments of $400 per month, which the parties hereto agree was reasonable. Petitioners likewise satisfy the third requirement: a business purpose for the lease. Petitioners' continued use of the realty was essential to their medical practice. After the petitioners conveyed the realty to the trustee, their continued possession of the premises was wholly conditioned upon the payment of rent. Under such circumstances, the execution of the lease was a matter of business necessity. Oakes v. Commissioner,44 T.C. 524 (1965); compare Wiles v. Commissioner,59 T.C. 289 (1972), affd. 491 F.2d 1406 (5th Cir. 1974). With respect to the fourth requirement in Mathews we cannot agree with respondent's contention that petitioners possessed an equitable interest or "equity" in the realty within the meaning of the statute. While respondent has not fully articulated his argument on this point, *351 he maintains that petitioners' wives had an "equity" in the realty by virtue of their remainder interest in the trust corpus. Apparently, respondent deems the wives' remainder interest as the equivalent of a reversionary interest on the part of petitioners. Assuming this were true, such interest was not derived from the lease or the lessor and would only become possessory after the termination of the trust. Therefore, such interest is not within the prohibition of section 162(a)(3). Mathews v. Commissioner,61 T.C. 12, 23 (1973). Accordingly, on the basis of the particular facts and circumstances involved herein, we hold the rental payments in question are deductible as ordinary and necessary business expenses. Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The property was conveyed from James E. Ramsay and Constance Ramsay, as joint tenants, to James E. Ramsay and Richard A. Serbousek, as tenants in common.
3. While petitioners' wives joined in the conveyance, it does not appear they owned any interest in the realty. ↩
4. The lease provided in part as follows: Second party [The Clinic] covenants that they will use all due care and diligence in guarding said property, with buildings, gates, fences, vines, shrubbery, etc., from damage, will pay all water rent and charges for gas or electric light that shall become due thereon during this lease; will secure, pay for and keep in force insurance on the premises in the minimum amount of $50,000; that the lessor and its agents may enter at any time to view same or for any necessary purposes. The lessee further agrees that he will in all respects comply with the city ordinance and requirements of the health authorities and particularly as to keeping said premises and the streets and alleys adjacent thereto, free and clear from all refuse and obstruction and the steps and sidewalks free from snow and ice; that he, she, or they will keep the buildings, glass, gates, fences, etc., in good repair as the same now are or may be placed at any time by the lessor, or as often as the same may require it, damage by superior force, inevitable necessity or fire from any other cause than carelessness of the second party, or persons of his, her or their employ, excepted, and at the expiration of this lease, or upon a breach by said second party of any of the covenants herein contained he, she, or they will without further notice of any kind, quit and surrender the possession and occupancy of said premises in as good condition as reasonable use and natural wear and decay will permit, damage by fire as aforesaid, superior force or inevitable necessity excepted. Second party will also pay all taxes on said premises, real or personal, on or before the due dates thereof, the failure of which to do shall constitute a default hereunder.
5. Petitioners caused their medical partnership to lease the realty from the trustee rather than lease it individually. The parties ignore this distinction and we do not find it meaningful in this case.↩
6. Sec. 162(a) (3) provides: (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩
7. While Butler v. Commissioner, 65 T.C. 327 (1975), was decided after Mathews v. Commissioner, 61 T.C. 12 (1973), revd. 520 F.2d 323 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976), Butler was decided solely under the rule established by this Court in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), and did not discuss the requirements applied by this Court in Mathews↩.
8. This conclusion rests not only upon the emphasis placed by the Court of Appeals on the question of control↩, but finds support in our examination of the cases cited by the court in its opinion.